# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WILLIAM MARTELL**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**GENERAL MOTORS LLC**,<br><br>    Defendant. | Case No. 3:20-cv-284-SI<br><br>**OPINION AND ORDER** |

John E. Tangren, Daniel R. Ferri, and Adam J. Levitt, Dicello Levitt Gutzler llc, Ten North Dearborn Street, Eleventh Floor, Chicago, IL 60602; Kim D. Stephens, Tousley Brain Stephens pllc, 1700 Seventh Avenue, Suite 2200, Seattle, WA 98101; and W. Daniel "Dee" Miles III, H. Clay Barnett III, and J. Mitch Williams, Beasley, Allen, Crow, Methvin, Portis & Miles pc, 272 Commerce Street, Montgomery, AL 36104. Of Attorneys for Plaintiff and the Proposed Class.

April N. Ross and Kathleen Taylor Sooy, Crowell & Moring llp, 1001 Pennsylvania Avenue NW, Washington, DC 20004; and Jennifer L. Campbell and Stephanie C. Holmberg, Schwabe, Williamson & Wyatt pc, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff William Martell brings this putative class action against General Motors LLC

(GM or Defendant), alleging breach of express warranty, violation of the Magnuson Moss

Warranty Act (MMWA), fraudulent omission, violation of the Oregon Unlawful Trade Practice

Act (UTPA), and unjust enrichment. Plaintiff asserts all claims on behalf of an Oregon statewide class, except the MMWA claim, which he brings on behalf of a nationwide class. Plaintiff seeks monetary, declaratory, and injunctive relief. GM moves to dismiss Plaintiff's Complaint for failure to state a claim and to strike the class allegations. For the reasons below, GM's motion to dismiss and to strike is GRANTED IN PART and DENIED IN PART.

## STANDARDS

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted).

## B.  Standing

The U.S. Constitution confers limited authority on the federal courts to hear only active

cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1546-47 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89-90 (2013).

Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to

seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. To have standing, a plaintiff must

have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must

satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally

protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal

connection between the injury-in-fact and the defendant's challenged behavior; and

(3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189;

*see also Spokeo*, 136 S. Ct. at 1547.

A plaintiff "must show standing with respect to each form of relief sought." *Ellis v.*

*Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). To establish Article III standing to

seek injunctive relief, a plaintiff must "allege either 'continuing, present adverse effects'" of a

defendant's past illegal conduct, "or 'a sufficient likelihood that [he] will again be wronged in a

similar way." *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), and *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Additionally, standing to seek equitable relief requires "a showing of an inadequate remedy at law and . . . a serious risk of irreparable harm." *Pulliam v. Allen*, 466 U.S. 522, 537 (1984); *see also O'Shea*, 414 U.S. at 499.

When a plaintiff seeks prospective injunctive relief, threat of repeated future injury may suffice to provide standing. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). As explained by the Ninth Circuit:

> A plaintiff seeking prospective injunctive relief "must demonstrate 'that he is realistically threatened by a *repetition* of [the violation].'" *Armstrong v. Davis,* 275 F.3d 849, 860–61 (9th Cir. 2001) (alteration in original) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 109 (1983)), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). A threat of repetition can be shown "at least two ways." *Id.* at 861. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Id.* "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.' " *Id.* (alterations in original) (quoting *LaDuke v. Nelson,* 762 F.2d 1318, 1324 (9th Cir. 1985)).

*Id.* (emphasis and alterations in original). The threat of repeated future injury, however, may not be "conjectural or hypothetical." *O'Shea*, 414 U.S. at 494 (1974) (quotation marks omitted).

## BACKGROUND

In 2011, Plaintiff bought a 2011 Chevrolet Silverado equipped with a Generation IV 5.3 Liter V8 Vortec 5300 LC9 engine (Subject Engine) from a Chevrolet dealership in The Dalles, Oregon (Dealership). Plaintiff's car was covered by GM's standard five-year warranty. In 2015, Plaintiff noticed that his vehicle was consuming excessive engine oil. Plaintiff continued to have related engine problems, causing him to need repeated service from the Dealership.

Throughout 2015 and 2016, the Dealership repeatedly told Plaintiff that his oil consumption level was normal.

In late 2016, Plaintiff's counsel investigated a suspected Oil Consumption Defect. In July 2017, Plaintiff's Dealership conducted an oil consumption test on Plaintiff's car. Upon receiving the results of this test—confirming the vehicle was using excessive oil—Plaintiff joined a class action lawsuit in the Northern District of California (the *Sloan* Action) on August 31, 2017. *See Sloan v. General Motors LLC*, Case No. 3:16-cv-07244-EMC (N.D. Cal.). Plaintiff was dismissed from the *Sloan* Action on February 11, 2020 because, after several decisions applying the U.S. Supreme Court's personal jurisdiction ruling in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.,* 137 S. Ct. 1773 (2017), the court in the *Sloan* Action found that it lacked personal jurisdiction over Plaintiff's claims. *See Sloan v. Gen. Motors LLC*, 2020 WL 664033 (N.D. Cal. Feb. 11, 2020).

Plaintiff filed this lawsuit on February 19, 2020, alleging that the Subject Engine is defectively designed. Compl. (ECF 1). Plaintiff alleges that the primary cause of the Oil Consumption Defect is that the "piston rings that GM installed within the [Subject Engines] do not maintain sufficient tension to keep oil in the crankcase." Compl. at ¶ 8. Plaintiff also alleges other problems, including issues with the Active Fuel Management System, the Positive Crankcase Ventilation (PCV) system, the Oil Life Monitoring System, and the oil pressure gauge indicator on the dashboard. He contends that GM knew of and intentionally concealed the Oil Consumption Defect and that GM has failed to compensate Plaintiff and the putative class members.

## DISCUSSION

GM moves to dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. GM further argues that Plaintiff lacks standing to request injunctive relief and

also moves to dismiss Plaintiff's nationwide MMWA claim under Rule 12(b)(1). In the

alternative, GM moves to strike Plaintiff's class allegations.

## A.  Breach of Express Warranty

GM argues that Plaintiff's express warranty claim fails because GM's Five-Year Limited

Warranty applies only to manufacturing defects and Plaintiff alleges a design defect. *See, e.g.*,

Compl. at ¶ 3 ("the Class Vehicles were engineered to fail") and ¶ 75 ("the design flaws caus[ed]

excessive oil consumption in the Class Vehicles"). Design defects are distinct from

manufacturing defects. A manufacturing defect occurs when a manufacturer constructs a single

product in a substandard manner, generally resulting in a deviation from the manufacturer's

intended result or from other seemingly identical products. *See, e.g.*, *Taylor v. Bos. Sci.*

*Corp.*, 2020 WL 4592923, at *2 (D. Ariz. Aug. 5, 2020). A design defect, however, occurs when

a manufacturer builds a product exactly how it was designed, but the design itself is defective.

*See, e.g.*, *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *21 (N.D. Cal. July 25, 2017).

Throughout the Complaint, Plaintiff alleges only a design defect when describing the faulty

piston rings and other vehicle components contributing to the Oil Consumption Defect.

Plaintiff alleges in his Complaint that the text of the warranty provided: "The warranty

covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring

during the warranty period." (Ellipses in Plaintiff's Complaint.) On the basis of this warranty

text, as alleged, Plaintiff asserts that the warranty covers defects related to materials or

workmanship and that such coverage should extend to the Oil Consumption Defect and to design

defects generally. Defendant argues that the phrase "materials or workmanship" applies only to

manufacturing defects, but not to design defects such as the Oil Consumption Defect.

Courts are not unanimous on whether an express warranty's coverage of defects in

"materials or workmanship" (or the phrase "materials and workmanship") extends to design

defects or is limited to manufacturing defects. Most decisions hold that this text in an express

warranty is limited to manufacturing defects and does not cover design defects.[1]

A few courts, however, have concluded that warranty language providing coverage of

defects in manufacturing or workmanship covers design defects. In *Koulajian v. Trek Bicycle

Corp.*, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992), the district court decided this issue before

many other courts, including federal appellate courts. The district court in *Koulajian* noted that

"the warranty's reference to 'workmanship' could refer to bicycle designs as well as to

implementation of those designs in the manufacturing process." *Id.* at *2. *Koulajian* was decided

under Indiana law. The Eighth Circuit, applying Indiana law, later rejected Koulajian's rationale

in *Bruce Martin Construction*.

In the context of analyzing whether a plaintiff could proceed with an unjust enrichment

claim, the district court in *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008

WL 4866604 (D. Neb. Nov. 7, 2008), concluded that an express warranty with similar text

---

[1] *See, e.g., Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753-54 (8th Cir. 2013)
("Thus, case law supports the view that, where a product is manufactured correctly but designed
inappropriately, the defect is one of design and not 'material or workmanship.'"); *Troup v.
Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013) ("In California, express warranties
covering defects in materials and workmanship exclude defects in design."); *Voelker v. Porsche
Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003) (affirming the district court's dismissal of
express warranty claim where warranty provided for repair or replacement of parts that were
defective in "materials or workmanship" because the plaintiff alleged a design defect); *Sloan v.
Gen. Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("[T]he overwhelming
weight of state law authority holds that design defects are not covered under [GM's Limited
Warranty]."); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613 (E.D. Mich. 2017) ("A
MMWA claim fails as a matter of law if it alleges a design defect, but is brought under an
express written warranty covering 'materials and workmanship.'" (simplified)); *Coba v. Ford
Motor Co.*, 2016 WL 5746361, at *9 (D.N.J. Sept. 20, 2016) ("I join *Nelson*, and the majority of
cases, in holding that design defects are not covered by this express workmanship and materials
warranty."); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013)
("[T]he phrase 'free from defects in material and workmanship' in defendant's limited warranty
refers only to manufacturing defects, not design defects.").

encompassed a claim of design defect. *Id.* at *14-15. The court noted that "design is integrated into each step of the manufacturing process and affects both materials and workmanship." *Id.* at *15. Thus, the court concluded, the plaintiff's unjust enrichment claim was barred by the express warranty in that case.

Finding no persuasive and authoritative analysis suggesting that the phrase "materials or workmanship" should be read to include design defects, and a large body of law holding otherwise, the Court finds that the term "materials or workmanship" in the warranty at issue applies only to manufacturing defects, not to design defects. Although the Court is persuaded that "defects in materials or workmanship" refers only to manufacturing defects, how this phrase is given meaning within the express warranty is a matter of contract interpretation. *See Oregon Azaleas, Inc. v. W. Farm Serv., Inc.*, 65 F. App'x 101, 102 (9th Cir. 2003) (noting that breach of warranty is a "contract-based area" of the law); *F.C. Austin Co. v. J.H. Tillman Co.*, 104 Or. 541, 590 (1922) ("The rules for the interpretation of express warranties do not essentially differ from those applied to other contracts. In construing such contracts, the object to be attained is the intent of the parties[.]"). To determine the meaning of an express warranty, as with any other contract, the specific text of the warranty must be examined.

The Court requested and received the full text of the express warranty, which reads as follows without the ellipses added by Plaintiff in his Complaint:

> The warranty covers repairs to correct *any vehicle defect,* not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.

ECF 31-2 at 9 ("Repairs Covered") (emphasis added).

In support of Plaintiff's assertion that the warranty covers design defects, Plaintiff cited but did not discuss *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019), in his

Response (ECF 14) and Sur-Reply (ECF 29). In *Weiss*, the court construed the full warranty text as provided above, rather than examining the phrase "materials or workmanship" in isolation. Relying on principles of contract interpretation, the *Weiss* court concluded that without a comma separating "vehicle" from "related to materials or workmanship," the warranty read as covering *any* vehicle defect *except* "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Today, the Court does not reach this issue as Plaintiff has not explicitly alleged or argued it. Plaintiff's express warranty claim (Count 3) is dismissed without prejudice and with leave to replead.

## B.  Magnuson Moss Warranty Act

Plaintiff's claim under the MMWA rests on his predicate state law claim. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (noting that MMWA claims "stand or fall" with state law express or implied warranty claims). Here, Plaintiff has alleged only an express warranty claim and not an implied warranty claim. Because the Court has granted Defendant's motion to dismiss Plaintiff's express warranty claim, Plaintiff's MMWA claim (Count 1) is dismissed without prejudice and with leave to replead.

The Court also notes that Plaintiff may not bring MMWA class allegations unless 100 named plaintiffs assemble. *See Floyd v. Am. Honda Motor Co*., 966 F.3d 1027, 1035 (9th Cir. 2020); 15 U.S.C. § 2310(d)(3)(C). Further, if Plaintiff repleads his MMWA claim, he must meet all of the statutory requirements, including claiming an amount in controversy of at least $50,000. 15 U.S.C. § 2310(d)(3)(B).

## C.  Fraudulent Omission

GM argued in its briefing that Plaintiff's fraudulent omission claim must be dismissed because it is preempted by Oregon's product liability statute, Oregon Revised Statutes (ORS) §§ 30.900, *et seq.* Before oral argument, the Court provided specific case law and questions for

the parties to address at oral argument on this issue. At oral argument, GM conceded that under

Oregon law the products liability statute does not "preempt" other common law claims but

merely "embraces" those claims such that the statutory framework applies to those theories of

liability.[2] Thus, GM withdrew this argument.

GM argues, however, that Plaintiff's allegations of fraud are inadequate because they do

not meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure

for claims sounding in fraud, fail to demonstrate that GM had a duty to disclose the alleged

material omissions, fail to allege reliance, and fail to show GM's knowledge. To satisfy

Rule 9(b), a plaintiff's allegations must be "specific enough to give defendants notice of the

particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong." *Semegen v.

Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Additionally, "allegations grounded in fraud must

be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v.

Ciba-Geigy Corp. USA*, 317 F.3d 1097,1106 (9th Cir. 2003).

---

[2] Under Oregon law, "[a] product liability civil action 'embraces all theories a plaintiff
can claim in an action based on a product defect,' including, for example, negligence, strict
liability, breach of warranty, and fraudulent misrepresentation." *Simonsen v. Ford Motor Co.*,
196 Or. App. 460, 466 (2004). This means that if the gravamen of a cause of action is a product
defect, regardless of theory of liability, then Oregon's product liability statutory framework,
including its statute of limitations, statute of repose, and requirements relating to manufacturers
and distributors, will govern the cause of action. *See Weston v. Camp's Lumber & Bldg. Supply,
Inc.*, 205 Or. App. 347, 357, *opinion adh'd to as mod. on recons.*, 206 Or. App. 761 (2006)
(determining that the products liability statute governed certain common law claims and applying
that statutory limitations period to those claims); *see also AMC, LLC v. Nw. Farm Food Coop.*,
2020 WL 485529, at *9 (D. Or. Jan. 29, 2020) ("Under Washington law, the WPLA is the
exclusive remedy for product liability claims. . . . Oregon law permits plaintiffs to bring product-
based claims under common law negligence."); *Powell v. Adlerhorst Int'l, Inc.*, 2015
WL 6756126, at *6 (D. Or. Nov. 4, 2015) (discussing Oregon cases applying products liability
statute to common law claims as applying the products liability statute of repose and statute of
limitations and noting that "Adlerhorst has cited no cases, and I have found none, holding that a
negligence action cannot co-exist with a viable strict product liability claim").

Oregon law recognizes four theories of fraud: (1) affirmative misrepresentation; (2) omission of a material fact when there is an independent duty to disclose; (3) omission of a material fact needed to make a "half-truth" not misleading; and (4) actual or active concealment. *See Unigestion Holding, S.A. v. UPM Technology, Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016). Plaintiff has not been clear about which type of fraud claim he alleges, at times alluding to omission, at others to half-truth, and perhaps in others to active concealment.

To allege an omission claim properly, a plaintiff must show a duty to disclose. *See Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 2014 WL 5285475, at *12 (D. Or. Oct. 15, 2014). A duty to speak or disclose exists when there is a special relationship between a plaintiff and a defendant. *Gardner v. First Escrow Corp.*, 72 Or. App. 715, 720 (1985). When a special relationship exists, the defendant has a duty to disclose to the plaintiff all material matters of which the defendant had knowledge. *See Gebrayel v. Transamerica Title Ins. Co.*, 132 Or. App. 271, 281 (1995). A special relationship exists when the plaintiff has authorized the defendant to exercise independent judgment on the plaintiff's behalf and the defendant has accepted this responsibility. *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 160-62 (2001). A special relationship does not exist if the parties were merely in an "arm's-length" commercial or business relationship where they were acting in their own economic interest. *See Conway v. Pacific Univ.*, 324 Or. 231, 239-41 (1996); *see also Moore Excavating, Inc. v. Consol. Supply Co.*, 186 Or. App. 324, 333 (2003). Plaintiff has not alleged any relevant special relationship.

Plaintiff appears at times, especially in his Response brief, to be alleging a half-truth. To allege a half-truth properly, a plaintiff must allege reliance upon the communication from which the information was omitted. The Court has discussed elsewhere the element of reliance for a half-truth claim:

In cases involving half-truths, the reliance element of a fraud claim is more complex. *In Hynix Semiconductor Inc. v. Rambus Inc.*, the Northern District of California addressed at summary judgment the issue of establishing reliance in the context of a half-truth under California's fraud law.[3] 2007 WL 4209399 (Nov. 26, 2007). The court reasoned that "[o]rdinarily, one must prove that one read or heard a misrepresentation to have relied on it," but "[o]n the other hand, an omission is never conveyed, making it impossible for one to hear or read it." *Id.* at *7. The court further reasoned that "the half-truth calculated to deceive likely puts the one who hears it at ease," but that it "is the omitted portion of the half-truth that would have led a person to behave differently." *Id.* The court added that, given this dynamic, "to establish reliance in a case premised on 'half-truths,' a plaintiff must show that they heard the half-truth, but can be found to have relied on it if they would have behaved differently 'had the omitted information been disclosed.'" *Id.*

The reasoning in the *Hynix* case is consistent with Oregon fraud law. *Cf. Gregory*, 121 Or. App. at 655; *Heise v. Pilot Rock Lumber Co.*, 222 Or. 78, 89-90 (1960). Therefore, in order adequately to demonstrate fraud based on a half-truth made by Victaulic, Plaintiff must show that a relevant person: (1) heard the half-truth; and (2) would have "behaved differently had the omitted information been disclosed." *See Hynix*, 2007 WL 4209399, at *7.

*Benson Tower*, 2014 WL 5285475, at *13 (footnote and alterations in original).

Plaintiff recites numerous advertisements, brochures, radio ads, and other public statements by Defendant in the Complaint that Plaintiff alleges were misleading half-truths. Plaintiff does not, however, allege that he saw or heard any of those statements. Plaintiff alleges in his fraudulent omission claim that he "justifiably acted or relied to [his] detriment upon GM's omissions of fact concerning the . . . Oil Consumption"—in other words that he relied on the lack of knowledge of the material information about the defect. To establish reliance in a half-truth case, however, Plaintiff must show that he heard the half-truth, or that another person heard the half-truth and conveyed it to Plaintiff, who then relied upon it. *See Benson Tower*, 2014

---

[3] For purposes of the pending motion, the Court assumes that California's law of fraud is materially similar to Oregon's fraud law.

WL 5285475, at *13 (noting that reliance can in some cases be derivative and that it can be "sufficient to show that the defendant made a representation to a third party with the intention that it be communicated to and acted upon by the plaintiff" (simplified)). Plaintiff alleges neither and thus fails adequately to plead reliance. Because Plaintiff has not plead reliance, his fraudulent omission claim cannot survive on a half-truth theory.

The remaining theory under which Plaintiff may pursue a fraudulent omission theory is active or actual concealment. Plaintiff appears to bring such a theory with the allegations in the Complaint at ¶¶ 135-136 and 79-80. *See also Sloan v. General Motors*, 2020 WL 1955643, at *15-16 (N.D. Cal. April 23, 2020). Plaintiff's Count IV, however, does not expressly allege fraud by active concealment. Rule 9(b) is intended to require specificity of pleading, including precisely what theory or theories of fraud a plaintiff is alleging. If Plaintiff wants to proceed with a theory of fraud by active concealment based on GM's technical bulletins, Plaintiff must do so explicitly.

Plaintiff's Fraudulent Omission claim (Count 4) is dismissed without prejudice and with leave to replead. The Court declines, at this time, to address GM's other arguments against Plaintiff's fraud claim. The Court will consider those arguments if Plaintiff chooses to replead this claim. The Court notes, however, that under Rule 9(b) a defendant's state of mind (*i.e.*, knowledge and intent) may be "alleged generally."

## D.  Oregon's Unlawful Trade Practices Act

### 1.  Statute of Limitations

Oregon's UTPA provides that a suit "must be commenced within one year after the discovery of the unlawful method, act or practice." ORS § 646.638(6). Under the discovery rule, a cause of action accrues, and thus a statute of limitations begins to run, "when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a

reasonable person aware of a substantial possibility" that the elements of their claim existed. *Gaston v. Parsons*, 318 Or. 247, 256 (1994). The discovery rule is judged from an objective standard, which depends on what a reasonable person of ordinary prudence would have or should have known. *Gaston*, 318 Or. at 256.

Oregon law provides a two-step analysis for determining whether a plaintiff reasonably should have known of the claims asserted. *Moradi v. ReconTrust Co., N.A.*, 2017 WL 3259798, at *3 (D. Or. July 31, 2017). First, a plaintiff must have had sufficient knowledge to "excite attention and put a party upon his guard or call for an inquiry notice." *Mathies v. Hoeck*, 284 Or. 539, 543 (1978). Second, if the plaintiff had such knowledge, "it must also appear that a reasonably diligent inquiry would disclose the fraud." *Id.*; *see also Bell v. Benjamin*, 232 Or. App. 481, 486 (2009) (describing the two-step process). The discovery rule ordinarily presents a question of fact for the jury. *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 332 (2013). If, however, "the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known the critical facts at a specified time," a court appropriately may decide the issue as a matter of law. *Id.* at 333; *see also Mathies*, 284 Or. at 542 ("Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence.").

GM contends that Plaintiff has exceeded the one-year statute of limitations. GM argues that Plaintiff was on inquiry notice when he began to notice problems with his vehicle in 2015 and brought it in for service. GM further argues that Plaintiff could have discovered GM's allegedly unfair or deceptive conduct with reasonably diligent conduct. GM notes that Plaintiff did not file suit until he joined the *Sloan* Action on August 31, 2017, more than one year after the problems began with Plaintiff's vehicle in 2015.

In his response brief, Plaintiff argues that the limitations period for this claim was tolled with the filing of the *Sloan* Action in the Northern District of California on December 19, 2016. Plaintiff also argues that the limitations period between his discovery of his vehicle's oil related engine problems and the filing of his claim in the *Sloan* Action was tolled by GM's fraudulent concealment. The Complaint alleges that neither Plaintiff nor the class could have discovered that their vehicles were defective during the limitations period, even with reasonable diligence. Plaintiff also alleges that he could not have known about the alleged Oil Consumption Defect until after Plaintiff's counsel's investigation in late 2016. Plaintiff further alleges that although he brought his vehicle in for numerous servicing visits, he was repeatedly told that his vehicle's oil consumption was normal under GM standards and it was not until July 2017 that Plaintiff received an oil consumption test that confirmed his vehicle's excessive oil consumption problem.

At this stage of the litigation, the Court does not find that the only conclusion that a reasonable jury could reach is that Plaintiff knew or should have known before August 31, 2016 about GM's alleged conduct under the UTPA. Accordingly, Defendant's motion to dismiss this claim as untimely is denied. Based on this ruling, the Court need not reach a decision on Plaintiff's tolling argument.

### 2. Adequacy of Allegations

GM argues that Plaintiff must specifically allege deceptive advertising, reliance, and causation and that Plaintiff fails to allege that he personally encountered, relied on, or purchased his vehicle as a result of any specific GM advertisement. GM further argues that because Plaintiff's UTPA claim sounds in fraud, it must meet Rule 9(b)'s requirements.

Rule 9(b) applies to case "grounded in fraud" even when fraud is not an element of the claim. *Vess v. Ciba-Geigy Corp. USA,* 317 F. 3d 1097, 1103 (9th Cir. 2003); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1192 (D. Or. 2016). Rule 9(b)

has been applied to state law unfair trade claims. *See Kearney v. Equilon Enterprises, LLC*, 65 F. Supp. 3d 1033, 1041 (D. Or. 2014). GM argues that Plaintiff's UTPA allegations do not meet this standard. As discussed above with respect to Plaintiff's Fraudulent Omission claim (Count 4), Plaintiff has not clearly stated his theory of GM's fraudulent conduct; Plaintiff's allegations are too conclusory and vague to satisfy Rule 9(b). Plaintiff must clarify whether he is alleging (1) deceptive conduct by omission when there is a duty to disclose (and, if so, the source of the duty); (2) deceptive conduct by half-truth (and, if so, whether there has been reliance on the half-truth); or (3) deceptive conduct by active concealment.

GM further argues that Plaintiff did not plead reliance, a necessary element of a half-truth theory. *See Pearson v. Philip Morris, Inc.*, 358 Or. 88 (2015) (concluding "proof of reliance on the alleged misrepresentation was integral to plaintiffs' [UTPA] claim.")[4]. As discussed above, Plaintiff has not alleged reliance upon any of the GM advertisements detailed in the Complaint. If a half-truth theory does indeed form the basis of Plaintiff's UTPA claim, the lack of allegations demonstrating reliance is fatal. Plaintiff's UTPA claim (Count 2) is dismissed without prejudice and with leave to replead.

**E. Unjust Enrichment**

GM argues that the existence of an express warranty and of "adequate legal remedies" in Plaintiff's consumer protection, fraudulent omission, and express warranty claims prevent consideration of Plaintiff's unjust enrichment claim. These are the only arguments raised by GM

---

[4] In *Pearson*, the Oregon Supreme Court analyzed causation and reliance in the context of a claim involving both misrepresentations and omissions that were material because of the affirmative representations. The Court noted that under the UTPA, a "plaintiff must suffer a loss of money or property that was *caused by* the unlawful trade practice. Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved and the loss allegedly caused by it." *Id.* at 127 (emphasis in original).

related to Plaintiff's unjust enrichment claim and thus the only arguments addressed by the Court

with respect to this claim. Plaintiff responds that he is entitled to allege claims in the alternative,

especially because it has not yet been determined that an enforceable and applicable contract

exists or that a remedy at law is available to him in this case.

In Oregon, a party may plead alternative claims for breach of both an express contract

and a "quasi-contract." *Kashmir Corp. v. Patterson*, 289 Or. 589, 592 (1980). As explained by

the Oregon Supreme Court:

> We have frequently held that a plaintiff may plead alternatively on
> an express contract and in quantum meruit, and that the plaintiff
> cannot be required to elect upon which theory plaintiff will rely.
>
> * * *
>
> In the present case, when the builder prepared his complaint, he
> could not be certain what the position of the defendant would be.
> The builder probably knew that the owners would contend
> builder had not satisfactorily completed his contract but the builder
> probably did not know whether the owners were going to contend
> the builder was not entitled to recover on the contract because he
> substantially failed to complete the contract. For this reason the
> builder had the right to allege a count based upon the express
> contract and one based upon quasi contract.

*Kashmir,* 289 Or. at 592-93; see also *Kashmir*, 43 Or. App. at 48 ("Such alternative pleading

may be beneficial to the pleader in the situation where it is faced with a contract which may be

void under the statute of frauds, where its performance has been hindered by the defendant,

where the facts at trial may show that it did not substantially perform the contract but that it is

entitled to the reasonable value of the services furnished, or where the pleader is unsure of

whether it can actually prove the existence of the contract at trial.").

Unjust enrichment is a "remedial device which the law has formulated to permit

recovery . . . from a party even though under the law of express contracts that party would not be

obligated to pay." *Kashmir*, 289 Or. at 592. If it is "ultimately" determined that an *enforceable*

contract exists, however, that contract will control because "there cannot be a valid legally enforceable contract and an implied contract *covering the same services*." *Kashmir v. Patterson*, 43 Or. App. 45, 48 (1979) (emphasis added).

GM cites *Harney v. Associated Materials, LLC*, 2018 WL 468303 (D. Or. Jan. 18, 2018), and *Nguyen v. Cree, Inc.*, 2019 WL 7879879 (D. Or. Nov. 6, 2019), to argue that the existence of an express warranty, regardless of whether it applies to the defect alleged by Plaintiff or is enforceable, means that Plaintiff cannot allege an unjust enrichment claim. In *Harney*, whether the express warranty covered a defect of the type alleged by the plaintiff (*i.e.*, manufacturing versus design) was not at issue. Rather, the defendant argued that the plaintiff had not alleged a defect at all, but instead had alleged a *symptom* of a defect. *Id.* at *2. The Court found that the plaintiff had sufficiently alleged a defect under the warranty. *Id.* at *3. Thus, permitting the plaintiff's unjust enrichment claim to proceed along with a finding that the plaintiff sufficiently alleged a defect under the warranty that covered the subject matter at issue would not have comported with *Kashmir* and other Oregon law. That is distinguishable from this case, in which the enforceability and applicability of the warranty to the alleged defect is in dispute. Under the circumstances of this case, Oregon law allows pleading unjust enrichment in the alternative, at least until there is a dispositive determination that the express warranty applies. *See, e.g.*, *Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 448 F. Supp. 3d 1127, 1137 (D. Or. 2020) (finding at summary judgment that an express contract governed, granting summary judgment against the quasi-contract claim, and noting that "if the express contract between the parties governs the subject matter of this dispute, then—although Plaintiffs may have properly *pleaded* in the alternative breach of both express and implied contracts—the express contract

will control, because ultimately there cannot be a valid legally enforceable contract and an implied contract covering the same services" (simplified) (emphasis in original)).

*Nguyen* relies on the Court's statement in *Harney* that when a valid, legally enforceable contract exists, unjust enrichment may not be pleaded in the alternative. The applicability of the express warranty in *Nguyen* to the products at issue, however, was undisputed. Indeed, the defendant in *Nguyen* had provided the plaintiff with a refund and replacement light bulbs under the warranty. *See* 2019 WL 7879879, at *3. Here, the parties dispute whether GM's express warranty applies to the defect alleged by Plaintiff.

Plaintiff emphasizes in his Response that "GM has not admitted the existence of a contract between Plaintiff and GM governing the sale of his vehicle, and, in fact, has denied that the express warranty covers the subject matter of this lawsuit." GM is correct in its assertion that there is no dispute that the warranty is a valid contract. Whether a contract *exists*, however, does not end the inquiry. A contract that governs one aspect of the relationship between the parties, but is unrelated to the dispute at issue, is not valid, or is not enforceable, does not preclude the ability of a plaintiff to allege an unjust enrichment claim. *See Kashmir*, 289 Or. at 592-92.

The Court cannot yet determine whether there is a valid, applicable, enforceable contract governing the subject of this lawsuit. Rather, the parties dispute how the terms of the warranty should be interpreted, and whether as a result of that interpretation the warranty is an applicable and enforceable contract that covers the subject matter of the unjust enrichment claim. *See Munich v. Columbia Basin Helicopter, Inc.*, 2016 WL 4500778, at *8-9 (D. Or. Aug. 26, 2016) ("Here, although neither party disputes that the contract is enforceable, the parties dispute the terms of the contract and their meaning. As the contract's parameters are yet to be determined, it remains possible that plaintiff could have a claim not covered by the contract's terms. The Court

agrees with plaintiff that it would be premature to dismiss the unjust enrichment claim."); *see also Parrish v. Volkswagen Grp. of Am., Inc.*, 2020 WL 4529615, at *16 (C.D. Cal. May 7, 2020) (rejecting argument that unjust enrichment cannot be alleged in the alternative to an express warranty and other legal claims); *Click v. Gen. Motors LLC*, 2020 WL 3118577, at *10-11 (S.D. Tex. Mar. 27, 2020) (same). If Plaintiff succeeds on his argument that the express warranty applies and is enforceable, however, at that point his unjust enrichment claim should be dismissed. *See Kashmir*, 289 Or. at 593-94 ("At that point the validity *and enforceability* of the contract were no longer in issue, and the trial court correctly struck the quantum meruit count.") (emphasis added).

GM also argues that Plaintiff cannot allege an unjust enrichment claim along with a non-equitable claim. GM cites *Alsea Veneer, Inc. v. State*, 318 Or. 33 (1993), which was an appeal from a judgment, not a decision at the pleading stage. GM quotes *Alsea Veneer* as stating: "Equitable relief does not lie if there is an adequate remedy at law." This partial quote is misleading. The full passage from *Alsea Veneer* is:

> Defendants argue that plaintiffs should be limited to their remedies at law. We disagree. Equitable relief does not lie if there is an adequate remedy at law. *Johnson v. Steen,* 281 Or. 361, 575 P.2d 141 (1978). The remedy at law must be practical, efficient, and adequate, as full a remedy as that which can be obtained in equity. *N.Y. Life Ins. Co. v. Yamasaki,* 159 Or. 123, 78 P.2d 570 (1938). Equitable relief is appropriate here, because the remedy in damages is not an adequate remedy.

*Id.* at 36. As the full passage shows, equitable remedies are only foreclosed when the remedy at law is practical, efficient, and adequate—as full a remedy as that which can be obtained in equity. At this stage of the litigation, it is unknown whether the remedy at law meets this standard. Thus, Plaintiff is not barred from bringing his claim for unjust enrichment (Count 5) in

the alternative to his express contract or other legal claims on the basis of the availability of an equitable remedy.

**F. Standing to Request Injunctive Relief**

GM argues that Plaintiff lacks standing to seek injunctive relief because Plaintiff has not alleged a risk of ongoing or continuing harm. The Court agrees. Plaintiff has not asserted that there is an inadequate remedy at law, a continuing and present adverse effect of GM's alleged misconduct, a sufficient likelihood that Plaintiff will be wronged again in a similar way, or a serious risk of irreparable harm. Plaintiff alleges—and indeed suggests GM's knowledge is evidenced by—the fact that GM redesigned the Subject Engine to solve the Oil Consumption Defect. Thus, the harm has been ameliorated and is not alleged to be at risk of recurring. Additionally, Plaintiff alleges that the harm that he and the class suffered is the full or partial lease or purchase price of their vehicles. This is monetary harm. Plaintiff also has not shown that monetary damages would be insufficient to compensate Plaintiff and the putative class members. Accordingly, the Court strikes Plaintiff's demand for injunctive relief.

## CONCLUSION

Defendant's Motion to Dismiss and to Strike (ECF 12) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims other than his claim of unjust enrichment are dismissed without prejudice and with leave to replead. Plaintiff's Nationwide Class allegations and request for injunctive relief are stricken. Plaintiff may file an Amended Complaint within 14 days of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 6th day of October, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge