IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WILLIAM MARTELL, individually and on behalf of all others similarly situated**,<br><br>        Plaintiff,<br><br>    v.<br><br>**GENERAL MOTORS LLC**,<br><br>        Defendant. | Case No. 3:20-cv-284-SI<br><br>**OPINION AND ORDER** |

Kim D. Stephens, TOUSLEY BRAIN STEPHENS PLLC, 1700 Seventh Avenue, Suite 2200, Seattle, WA 98101; Adam J. Levitt, John E. Tangren, and Daniel R. Ferri, DICELLO LEVITT GUTZLER LLC, Ten North Dearborn Street, Sixth Floor, Chicago, IL 60602; and W. Daniel "Dee" Miles III, H. Clay Barnett III, and J. Mitch Williams, BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES PC, 272 Commerce Street, Montgomery, AL 36104. Of Attorneys for Plaintiff and the Proposed Class.

Kathleen Taylor Sooy and April N. Ross, CROWELL & MORING LLP, 1001 Pennsylvania Avenue NW, Washington, DC 20004; and Jennifer L. Campbell and Stephanie C. Holmberg, SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff William Martell brings this putative class action against General Motors LLC (GM). In his First Amended Complaint (FAC), Martell alleges violations of the Oregon Unlawful Trade Practice Act (UTPA), breach of express warranty, fraudulent concealment, and

unjust enrichment. ECF 46. Plaintiff asserts all claims on behalf of an Oregon statewide class. Plaintiff seeks monetary, declaratory, and injunctive relief.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, GM moves to dismiss all claims.[1] Against Plaintiff's UTPA claim, GM argues that Plaintiff has not satisfied the requirements under Rule 9(b) because Plaintiff fails to allege facts showing GM's knowledge of the alleged defect at time Plaintiff purchased his GM vehicle or that Plaintiff reasonably relied on any false or misleading statements. GM also contends that Plaintiff lacks standing to seek injunctive relief under the UTPA because Plaintiff does not allege a likelihood of continuing or future harm.[2] Against Plaintiff's claim of breach of express warranty, GM asserts the Plaintiff does not allege a "design defect" covered under GM's express limited warranty. Finally, against Plaintiff's claim of fraudulent concealment, GM maintains that Plaintiff has not satisfied the requirements under Rule 9(b) because Plaintiff fails to allege with particularity facts showing that GM took any active step to conceal any defect, that GM had knowledge of the alleged defect at the time Plaintiff purchased his vehicle, or that Plaintiff reasonably relied on any false or misleading statement made by GM. For the reasons stated below, the Court denies GM's motion to dismiss.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

---

[1] In its motion to dismiss, GM states that it moves to dismiss "all claims" asserted in Plaintiff's FAC, but GM does not explicitly discuss Plaintiff's claim of unjust enrichment.

[2] In his response, Plaintiff states that he consents to the dismissal, without prejudice, of his request for injunctive relief under the UTPA. ECF 52 at 16 n.11. Accordingly, Plaintiff's request for injunctive relief is stricken, and the Court need not further address that issue.

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**BACKGROUND**

In 2011, Plaintiff bought a 2011 Chevrolet Silverado equipped with a Generation IV 5.3 Liter V8 Vortec 5300 LC9 engine (the Subject Engine) from a Chevrolet dealership in The Dalles, Oregon (the Dealership). Plaintiff's car was covered by GM's standard five-year express warranty. In 2015, Plaintiff noticed that his vehicle was consuming excessive engine oil, and Plaintiff began experiencing engine problems related to the excessive oil consumption. Plaintiff then took his vehicle to the Dealership for service numerous times. Throughout 2015 and 2016, the Dealership repeatedly told Plaintiff that his oil consumption level was "normal."

In late 2016, Plaintiff's counsel investigated a suspected defect causing Plaintiff's car to consume excess oil (the Oil Consumption Defect). In July 2017, the Dealership conducted an oil consumption test on Plaintiff's car. Upon receiving the results of this test, which confirmed that the vehicle was using excessive oil, Plaintiff joined a class action lawsuit in the Northern District of California (the *Sloan* Action) on August 31, 2017. *See Sloan v. General Motors LLC*, Case No. 3:16-cv-7244-EMC (N.D. Cal.). That court, however, dismissed Plaintiff from the *Sloan* Action on February 11, 2020, concluding that under *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.,* 137 S. Ct. 1773 (2017), the Northern District of California lacked personal jurisdiction over GM regarding Plaintiff's claims. *See Sloan v. Gen. Motors LLC*, 2020 WL 664033 (N.D. Cal. Feb. 11, 2020).

Plaintiff then filed this lawsuit on February 19, 2020, alleging that the Subject Engine is defectively designed and asserting claims of breach of express warranty, violation of the Magnuson Moss Warranty Act (MMWA), fraudulent omission, violation of the UTPA, and unjust enrichment. GM moved to dismiss, which the Court granted in part with leave to amend. The Court denied the motion with respect to Plaintiff's claim of unjust enrichment but granted it with respect to all other claims. Plaintiff filed his FAC on October 20, 2020.

Plaintiff alleges that the primary cause of the Oil Consumption Defect is that the "piston rings that GM installed within the [Subject Engines] fail to keep oil in the crankcase." FAC ¶ 8. Plaintiff also alleges other problems, including issues with the Active Fuel Management System, the Positive Crankcase Ventilation (PCV) system, the Oil Life Monitoring System, and the oil pressure gauge indicator on the dashboard. Plaintiff contends that GM knew of and intentionally concealed the Oil Consumption Defect, and that GM has failed to compensate Plaintiff and the putative class members for the resulting damage.

## DISCUSSION

The Court first discusses GM's arguments against Plaintiff's claim of fraudulent concealment. The Court next turns to GM's contentions against Plaintiff's claim under the UTPA. Finally, the Court addresses GM's motion against Plaintiff's claim of breach of express warranty.

### A. Fraudulent Concealment

GM argues that Plaintiff's fraudulent concealment claim fails because Plaintiff does not allege facts showing that GM took active steps to conceal any defect, that GM had knowledge of the alleged defect at the time of sale, or that Plaintiff reasonably relied on any false or misleading statement made by GM. In addition, GM argues that the allegations in the FAC fail to satisfy the particularity requirements under Rule 9(b).

#### 1. Active Steps to Conceal

GM argues that Plaintiff fails to allege that GM took steps actively to conceal the Oil Consumption Defect. Because Plaintiff is bringing a fraudulent *concealment* claim, he must allege facts showing GM's deceptive acts intended to prevent discovery of the concealed information. Plaintiff responds that in Oregon, "active concealment occurs—even in the absence of a duty to speak—when a defendant engages in 'acts which create a false impression covering

up the truth.'" *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1226 (D. Or. 2016) (citations omitted). A claim of concealment differs from claims alleging misrepresentation or omission by a half-truth in that there is no affirmative representation on which a plaintiff may rely. *See Yeti Enters, Inc. v. Tang*, 2017 WL 3478484, at *6 (D. Or. Aug. 14, 2017) ("active concealment is defined as '[a]ny words or acts which create a false impression covering up the truth, . . . or which remove an opportunity that might otherwise have led to the discovery of a material fact as by floating a ship to conceal the defects in her bottom.'") (quoting *Paul v. Kelley*, 42 Or. App. 61, 66 (1979) and citing Prosser, Law of Torts § 106, at 695 (4th ed. 1971)).

The only act of concealment that Plaintiff alleges is the issuance of Technical Service Bulletins (TSBs). TSBs are formal, standardized written guidance issued by GM to dealerships that provide information on the steps and procedures for maintaining GM vehicles. GM issued twelve TSBs between 2010 and 2014 that address the Oil Consumption Defect. Plaintiff alleges that these TSBs concealed the Oil Consumption Defect by providing a "solution" that GM knew to be ineffective. If GM had the requisite knowledge, as discussed below, these allegations plausibly support this element of Plaintiff's fraudulent concealment claim by showing an act creating a false impression intending to cover up the truth or remove an opportunity that might otherwise have led to the discovery of a material fact.

### 2. Reliance

GM also argues that Plaintiff's allegations of reliance do not satisfy Rule 9(b). That rule provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the

filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir.1996) (alterations original).

Plaintiff has specified which TSBs undergird his argument with requisite particularity. He alleges the TSB number, the date of issuance, and the specific "fixes" offered by two TSBs, as well as the date of issuance of the final relevant TSB, and the number of TSBs addressing the issue. *See* FAC ¶¶ 72-76. Thus, GM has been informed about which TSBs Plaintiff is suggesting constituted fraudulent concealment and that the dissemination of those TSBs to GM dealers, who relied on them when responding to customer complaints about excessive oil consumption, caused the alleged concealment. This information provides GM with sufficient notice to defend against the claim.

GM also argues that Plaintiff has not plausibly alleged reliance. Requiring a Plaintiff who has been the victim of fraudulent concealment to allege direct reliance on the concealment itself is anathema to the nature of the claim. *See Paul*, 42 Or. App. at n.3 (noting that when the truth has been affirmatively concealed, the right to recover does not depend on a misrepresentation being conveyed to the plaintiff) (citing *Handy v. Beck*, 282 Or. 653 (1978)); *see also Sanders v. Francis*, 277 Or. 593, 598-99 (1977) (finding that under a failure to disclose theory, it is artificial to require a plaintiff to plead reliance on information they did not have, the ignorance of which caused their injury). Any reliance on fraudulent concealment, therefore, is necessarily indirect and need be pleaded only insofar as it is necessary to plausibly show causation. Here, Plaintiff

has alleged that GM issued TSBs to its dealers and that had GM not concealed relevant information in those TSBs Plaintiff would not have been damaged (or at least not damaged as much).

Plaintiff alleges that he continued to operate his car without fully repairing the defective piston rings after bringing his excessive oil consumption concerns to the attention of the Dealership, causing ongoing danger and additional repair costs. Plaintiff's theory of fraudulent concealment alleges the issuance of TSBs beginning in 2010. Plaintiff contends that, among other things, by issuing TSBs that GM knew failed to correct the Oil Consumption Defect, GM prevented car owners, including Plaintiff, from discovering the nature and extent of the defect. Plaintiff alleges that GM's issuance of the TSBs "created a false impression as to the cause of excessive oil consumption in the Class Vehicles, and the severity of the problem. In doing so, these TSBs covered up the truth of the Oil Consumption Defect and removed opportunities that might have led to the disclosure of the Oil Consumption Defect." FAC ¶ 246. Plaintiff also contends that he, and other putative class members, were injured based on the material omissions of fact in the TSBs. These allegations plausibly support a claim for fraudulent concealment.

3. **Knowledge**

GM also argues that Plaintiff has not sufficiently alleged GM's knowledge of the Oil Consumption Defect. GM discusses two bases of Plaintiff's allegation that GM had knowledge of the defect when Plaintiff bought his vehicle—online consumer complaints and a series of technical service bulletins (TSBs). GM argues that consumer complaints do not show knowledge by GM, especially when those complaints related to vehicle models other than the model bought by Plaintiff or were posted after Plaintiff's bought his vehicle. GM also asserts that the TSBs merely "alert dealerships of potential customer complaints" and do not show knowledge by GM

because they "do not suggest that all Class Vehicles had issues or required repairs, or suggest that the oil consumption experienced by consumers was the result of any defect."

Plaintiff responds that GM knew that the initial "fixes," namely piston cleaning, were ineffective, and Plaintiff alleges that in the FAC. Specifically, Plaintiff alleges that GM knew of the Oil Consumption Defect beginning in 2008, that an investigation into it was initiated in June 2009, and that this investigation identified and confirmed in 2010 that the piston/ring assembly caused the oil consumption problems. *See* FAC ¶¶ 98-101. Plaintiff also connects that knowledge to the issuance of the TSBs:

> As discussed above, the TSBs directed dealerships, upon complaint of oil consumption in the Generation IV Vortec 5300 Engines to perform a piston cleaning procedure and relatively minor modifications, *which GM knew did not truly address the Oil Consumption Defect*. GM continually released these TSBs through 2014.

FAC ¶ 244 (emphasis added).

Because Rule 9(b) specifically provides that a defendant's own culpable knowledge may be alleged generally, the heightened particularity standard does not apply to the allegations of GM's knowledge. At this stage of the litigation, the Court need not find that the TSBs themselves suggested that *all* vehicles required repairs and the oil consumption problem was the result of a defect or even that they are sufficient by themselves to prove Plaintiff's claim. Rather, the Court must ask whether the issuance of the TSBs and the other allegations of GM's knowledge make Plaintiff's claim that GM had knowledge of the defect facially plausible. The Court concludes that they do. Plaintiff has alleged sufficient facts to support his claim that GM had knowledge of the Oil Consumption Defect.

4. Conclusion

Plaintiff sufficiently alleged facts, with enough particularity where required, to support his claim of fraudulent concealment of the Oil Consumption Defect. Thus, the Court denies GM's motion to dismiss Plaintiff's claim of fraudulent concealment.

B. Oregon Unlawful Trade Practices Act

GM argues that Plaintiff's UTPA claim does not satisfy Rule 9(b)'s specificity requirements and that Plaintiff does not allege facts establishing GM's knowledge of the alleged defect at the time of sale or Plaintiff's reasonable reliance. In *Pearson v. Philip Morris, Inc.*, relied on by GM, the Oregon Supreme Court analyzed causation and reliance in the context of a claim involving both alleged misrepresentations and material omissions. 358 Or. 88, 127 (2015). The court in *Pearson* explained that a UTPA claim does not itself require reliance, but reliance must be shown if it is integral to the underlying unlawful trade practice. *Id.* The court further noted that under the UTPA, a "plaintiff must suffer a loss of money or property that was *caused* by the unlawful trade practice. Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved and the loss allegedly caused by it." *Id.* (emphasis in original).

As discussed above, Plaintiff has adequately pleaded active steps to conceal, GM's knowledge, and reliance. The UTPA imposes no additional requirements on the predicate claim for an unlawful trade practice. Thus, the Court denies GM's motion to dismiss Plaintiff's claim under the UTPA.

C. Breach of Express Warranty

GM argues that Plaintiff's breach of express warranty claim cannot proceed because GM's Five-Year Limited Warranty applies only to manufacturing defects, but Plaintiff alleges a design defect. *See, e.g.*, FAC ¶ 3 ("the Class Vehicles were engineered to fail"); ¶ 118 ("the

design flaws caus[ed] excessive oil consumption in the Class Vehicles"); and ¶ 230 ("The Oil Consumption Defect is a uniform design defect that is related to materials."). Design defects are distinct from manufacturing defects. A manufacturing defect, for example, occurs when a manufacturer constructs a single product in a substandard manner, generally resulting in a deviation from the manufacturer's intended result or from other seemingly identical products. *See, e.g.*, *Taylor v. Bos. Sci. Corp.*, 2020 WL 4592923, at *2 (D. Ariz. Aug. 5, 2020). A design defect, however, occurs when, for example, a manufacturer builds a product exactly how it was designed, but the design itself is defective. *See, e.g.*, *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *21 (N.D. Cal. July 25, 2017). Manufacturing defects are commonly described as defects in "materials or workmanship." *See, e.g.*, *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753-54 (8th Cir. 2013) ("Thus, case law supports the view that, where a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"). Throughout the FAC, Plaintiff alleges only a design defect when describing the faulty piston rings and other vehicle components causing or contributing to the Oil Consumption Defect.

Plaintiff and GM disagree as to whether the warranty applies to the design defect alleged by Plaintiff. The relevant section of the warranty reads as follows:

> Repairs Covered
>
> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.

FAC ¶ 225.

Plaintiff argues that the text of this clause includes, as it expressly states, "any vehicle defect" except for "slight noise, vibrations, or other normal characteristics of the vehicle related

to materials or workmanship occurring during the warranty period." Under Plaintiff's reading, the phrase "related to materials or workmanship" modifies the "normal characteristics of the vehicle" that are excluded from coverage, and "slight noise" and "vibrations" are two examples of such "normal characteristics of the vehicle related to materials or workmanship." Because the Oil Consumption Defect is not a normal characteristic of the vehicle related to materials or workmanship, similar to slight noise or vibrations, Plaintiff argues, that alleged defect is covered by the express warranty and not excluded.

GM, however, argues that "related to materials or workmanship" does not apply to the phrase or list immediately preceding that phrase, but instead modifies "any vehicle defect." Under this reading, the clause would still exempt "slight noise, vibrations, and other normal characteristics of the vehicle" but the phrase "related to materials or workmanship" would not be read as limited to the modification of those items. GM argues that to read the warranty as Plaintiff contends would conflict with what a reasonable consumer would expect an express warranty to cover, that punctuation should not be considered when interpreting a contract, that GM's reading has been adopted by most courts considering GM's various express warranties, and that Plaintiff's reading causes the warranty to extend indefinitely.

Before considering GM's arguments in detail, the Court analyzes the clause itself, examining it on its own and in the context of entire warranty. *See Yogman v. Parrott*, 325. Or. 358, 361 (1997) ("To interpret a contractual provision . . . the court follows three steps. First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.") First, the clause sets out a broad array of coverage ("This warranty covers repairs to correct any vehicle defect"). Then, a comma and the word "not" are used to separate that broad category of coverage from what is "not" covered ("This

warranty covers repairs to correct any vehicle defect, not . . .". Next, the category of issues that are not covered is defined ("slight noise, vibrations, or other normal characteristics of the vehicle . . ."). Both parties agree up to this point. The dispute arises when the Court is asked to determine whether the list of exclusions is modified by or is independent of the phrase "related to materials or workmanship" that immediately follows, without conjunction or punctuation.

Upon a plain reading of the text of the clause, the Court concludes that the phrase "related to materials or workmanship" modifies the phrase "other normal characteristics of the vehicle" or, possibly, the longer phrase "slight noise, vibrations, or other normal characteristics of the vehicle." Without punctuation or other grammatical convention separating the two phrases, there is no indication that they are not connected. Proceeding from that understanding, the Court examines whether the limitation to materials or workmanship applies to modify, or limit, the phrase "all vehicle defects" such that the clause excludes design defects but includes manufacturing defects. The Court finds two commonly used canons of construction instructive. As GM notes, rules of grammar should not be applied to render language in a contract "meaningless" or "absurd." *See Jarrard v. Cont'l Cas. Co.*, 250 Or. 119, 124 (1968). Instead, the Court here looks to these canons to provide a framework for understanding the logical, non-absurd ways in which one might construe the warranty clause.

First, the series qualifier canon provides that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia and Bryan A. Garner, *Reading the Law* 147 (1st ed. 2012). Here, "related to materials or workmanship" is the relevant postpositive modifier. For "related to materials or workmanship" to apply to "any vehicle defects" under this canon of interpretation, "any vehicle defects" must be part of a straightforward, parallel construction that

involves all nouns or verbs in a series and precedes the post-positive modifier so that it is so modified. Two nouns ("noise, vibrations") precede the modified phrase ("other normal characteristics of the vehicle related to materials or workmanship"), but these nouns are set apart from a third noun ("vehicle defects") by a comma and the word "not." The word "not" following a comma distinguishes the word "noise" from the phrase preceding the comma, which cannot be said to be part of a parallel construction.

To hold otherwise, the Court would need to find that the word "not" modified the slightness of the noise. To accomplish this, GM would have needed to join "not" and "slight" with a hyphen ("all vehicle defects, not-slight noise, vibrations"). To make such a transformational change would require the Court to find that there was a punctuation error so obvious that the sentence was essentially rendered absurd or contradictory. *See, e.g.*, *Biomass One, L.P. v. S-P Const.*, 103 Or. App. 521, 526 (1990) (a court may read punctuation into a contract when there is such an "obvious typographical error" that the sentence is unreadable and the correction of the error creates one, unambiguous meaning). That is not the case here.

On the contrary, inserting a hyphen after "not" so that all vehicle defects became part of series constructed in parallel would then suggest that the coverage extended to all vehicle defects, more than slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship. This is not the reading GM advocates, and it makes little sense. Under that reading, the warranty becomes highly expansive, covering all defects *and* "normal characteristics of the vehicle" that resulted from the manufacturing process. This is not the one, unambiguous meaning that the clause is meant to have, and the Court will not insert punctuation to make it so.

Second, the separation of the last noun in the series with the words "or other" implies that the noun or nouns preceding "or other" are a type of thing described by the noun following "or other." Here, the doctrine of *ejusdem generis* is informative. As Scalia and Garner helpfully explain, the "*ejusdem generis* canon applies when a drafter has tacked a catchall phrase at the end of an enumeration of specifics[.]" Scalia and Garner provide several examples where "or other" or "or any other" are used in this fashion. Scalia & Garner, *supra*, at 201. This is precisely what is done in the clause, where slight noise and vibrations are two examples of normal characteristics of the vehicle related to materials or workmanship, and such normal characteristics are not covered by the text of the express warranty.

Plaintiff's interpretation is further validated by use of the term "materials or workmanship," or slight variants thereof, throughout the warranty. *See Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 405 (1995) ("The court looks at the four corners of a written contract and considers the contract as a whole with emphasis on the provision or provisions in question."). When a certain construction is consistently used throughout a document, the reader can infer that when that construction differs in one passage, the alteration was intentional and carries a distinct meaning. Several clauses throughout the warranty addressing specific components of the vehicle or specific vehicle types clearly state that only defects caused by materials or workmanship are covered. *See, e.g.*, ECF 31-2 (Exhibit B, GM Five-Year Limited Warranty) p. 11 ("The tires supplied with your vehicle are covered by General Motors against defects in material or workmanship"); p. 16 ("Windshield cracks will be covered for the first 12 months, regardless of mileage if caused by defects in material or workmanship."), p. 19 ("This Voltec warranty covers repairs to correct any Voltec component defect related to materials or workmanship occurring during the 8 year or 100,000 miles (160,000 kilometers) term"); p. 20

("This Hybrid warranty covers repairs to correct any Hybrid component defect related to materials or workmanship occurring during the 8 year or 100,000 miles (160 000 kilometers) term"). These clauses show that when GM intends to only cover defects in materials or workmanship, it does so without requiring any additions or revisions to achieve that meaning. Thus, the Court finds that according to the plain meaning of the relevant clauses, examining them through two canons of construction, and looking at them within the four corners of the warranty, the express warranty shows that GM has created a carve-out from its coverage of all vehicle defects, so that minor and normal characteristics of a vehicle that might result from small deviations in workmanship or materials during the manufacturing process, such as slight noise or vibrations, are not considered defects and are thus not covered under the express warranty.

GM argues that to read the warranty as Plaintiffs contend would conflict with what a reasonable consumer would expect a warranty to cover. This is because, GM asserts, a reasonable consumer would only expect a warranty to cover "defects . . . related to materials or workmanship." Plaintiff replies by stating, on the contrary, a reasonable consumer would expect a warranty to cover major issues resulting from flawed design, such as the Oil Consumption Defect.

GM's construction is more likely than Plaintiff's to contradict the expectations of a reasonable consumer. To reach its meaning, GM suggests that a reasonable consumer would make two leaps. First, according to GM, a reasonable consumer would insert a comma between vehicle and "related to materials or workmanship" so that the phrase "related to materials or workmanship" modifies "any vehicle defect" rather than "normal characteristics of a vehicle." Second, GM asserts that a reasonable consumer would make this revision to *reduce* the scope of the express warranty's coverage to manufacturing defects only. GM, however, offers no reason

for why a reasonable consumer would not expect their express warranty to include faulty design, and further why a reasonable consumer would rewrite the plain text of an express warranty to reduce its coverage. GM also has not explained how a reasonable consumer, under this interpretation, would understand the warranty's coverage of the phrase "slight noise, vibrations, and other normal characteristics of the vehicle."

Plaintiff's reading reflects common sense notions of what an express warranty would likely cover when not otherwise limited by the text of that warranty. A reasonable consumer is likely to understand that their express warranty does not cover small, "normal" issues, including slight noise or vibrations, that result from the materials or workmanship and are not tantamount to a defect. That such "normal" characteristics resulting from materials or workmanship might arise and be excluded from coverage due to their "slight" nature does not contradict a reasonable consumer's expectation. Further, that such slight and normal issues would result from materials or workmanship is sensible. The Court also is not persuaded that a reasonable consumer would expect an express warranty not to cover a design defect, and GM has offered only minimal argumentation (and no evidence) to that effect.

GM also argues that punctuation should not be considered when interpreting a contract. GM's assertion is not persuasive. GM cites two cases. In *Biomass One, L.P. v. S-P Const.*, 103 Or. App. 521, 526 (1990), the court specifically stated that an "obvious typographical error" made the sentence unreadable, and that upon the insertion of the missing semi-colon the sentence had one, unambiguous meaning. That is not the case here, where the relevant text is readable and understandable as written and there is no obvious typographical error. That the clause does not carry the meaning GM wants it to carry (or perhaps even intended it to carry) is not an "obvious typographical error," and the Court will not add or disregard punctuation in an otherwise logical sentence to construct a new meaning to suit the will of the drafter. GM also cites *In re Grogan*,

2013 WL 5630627 (BAP 9th Cir. 2013), a bankruptcy case in which the court determined that Christmas trees were included in contract language governing "[a]ll trees, bushes, vines and other permanent plantings." In addition to concluding that Christmas trees would be included even if "permanent plantings" modified "trees,"[3] the court found that the word "permanent" may modify the word "trees" even without the serial comma after the word "vines" and that a strict reading of the clause according to the doctrine of the last antecedent did overcome other indicia of meaning in the contract. *Grogan* provides no relevant guidance on the issue now before this Court.

In addition, GM contends that its reading has been adopted by the "vast majority" of courts and that the cases of *Weiss v. Gen. Motors*[4] and *McKee v. Gen. Motors*,[5] which adopted the reading that Plaintiff advocates, are outliers. GM cites several cases in which courts considered the shortened version of the warranty presented in Plaintiff's original complaint or entirely separate warranty text, rather than the full warranty clause now before the Court. In none of these cases did the court analyze the text of the full warranty clause.[6] The Court has not

---

[3] "First, the language in § 4 of Harvest's Security Agreement, "[a]ll trees, bushes, vines and other permanent plantings" is broad enough to include Christmas trees as either "trees" or "permanent" trees for purposes of the UCC reasonable identification test." *Grogan*, 2013 WL 5630627 at *8.

[4] 418 F. Supp. 3d 1173 (S.D. Fla. 2019).

[5] 376 F. Supp. 3d 751 (E.D. Mich. 2019).

[6] *Szep v. Gen. Motors LLC*, 2020 WL 5834876, at *6 (N.D. Ohio Sept. 30, 2020) ("GM's limited warranty covers 'repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.'" without analyzing the entire clause to discern meaning); *Harris v. Gen. Motors LLC*, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020) (finding that the phrase materials and workmanship refers to manufacturing defects, not design defects); *Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *5 (N.D. Cal. June 1, 2018) (considering a warranty that provided "The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period."); *Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *4 (S.D.N.Y. Mar. 31, 2016) (No analysis of full

located any cases in which a court considered and analyzed the complete clause of the express warranty at issue here and found that it only covered defects in materials or workmanship.

GM's final argument[7] in favor of its reading is that inclusion of the time limitation in the clause renders Plaintiff's reading internally contradictory. The final clause in the list reads "or other normal characteristics of the vehicle related to materials or workmanship *occurring during the warranty period*." GM argues that to read the clause following "all vehicle defects, not . . ." as a carve-out would mean that the coverage of "all vehicle defects" would extend indefinitely because no time limiting language would apply.

Plaintiff responds that the warranty itself contains other clauses governing the time period for coverage, and that there is no reason to infer that the disputed provision should be read to override that language or to create an absurd result. The Court agrees with Plaintiff. The inclusion of time-limiting text in a provision already covered by time-limiting test may be redundant and unnecessary, but it does not contradict or render absurd the plain text and meaning of the clause when considered under the other terms of the express warranty, which provide that

---

warranty clause); *Acedo v. DMAX, Ltd. & Gen. Motors LLC*, 2015 WL 12696176, at *23 (C.D. Cal. Nov. 13, 2015) (considering whether warranty coverage of materials and workmanship applies to design defects without analyzing the full clause under this Court's consideration); *In re Motors Liquidation Co.*, 2013 WL 620281, at *6 (Bankr. S.D.N.Y. Feb. 19, 2013) (considering the Glove Box Warranty which provided coverage of "any vehicle defect related to *materials or workmanship* occurring during the warranty period.") (emphasis original); *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ("[W]ritten warranty which promised the vehicles were "to be free of defects in materials and workmanship at the time of delivery.").

[7] GM states in its pending motion to dismiss and in its reply brief that this Court's prior opinion held that the warranty only applied to manufacturing defects, not design defects. The Court made no such holding. Instead, the Court found that the words "materials and workmanship" refer to manufacturing, rather than design, without interpreting the way that this term applied within the entire warranty clause as it is now presented before the Court.

PAGE 19 – OPINION AND ORDER

the entire warranty is only valid for a limited period. GM argues that the Court may not interpret an express warranty in a way that renders one of its terms or provisions superfluous. In doing so, GM asks the Court instead to construct an entirely new meaning that is different from the one suggested by a plain reading of the clause itself and the warranty as a whole. The Court declines to rewrite an entire clause, changing its meaning in significant ways, to avoid a redundancy drafted by GM. Thus, the Court denies GM's motion to dismiss Plaintiff's breach of warranty claim.

## CONCLUSION

The Court denies General Motor's Motion to Dismiss First Amended Class Action Complaint (ECF 51).

**IT IS SO ORDERED**.

DATED this 7th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge